T UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

                                     Case Nos.: 11-12036

Betty Lou Fox                            Honorable Sean F. Cox

                    Debtor/Apellee.

_____/

John Barcume,

                                       Bankr. Ct. Case. No.: 09-34314-dof

                    Appellant,             Honorable Daniel S. Opperman

v.

Betty Lou Fox,                          Adv. Proc. 09-03514-dof

                    Appellee.

_____/

## OPINION & ORDER AFFIRMING
## THE DECISION OF THE BANKRUPTCY COURT

John Barcume, one of Defendant/Appellee Betty Lou Fox's creditors, filed this bankruptcy appeal on May 10, 2011, challenging an order by the bankruptcy court denying Appellant's request to Deny Debtor's Discharge under 11 U.S.C. § 727(A)(2) and (A)(4).  On appeal, Barcume asserts that the bankruptcy court erred by finding that he did not meet his burden of establishing that Fox attempted to defraud, hinder, or delay her creditors.  After the parties fully briefed the issues, this Court issued an order pursuant to FED. R. BANKR. P. 8012, finding that the decisional process would not be significantly aided by oral argument.  For the reasons that follow, the Court shall AFFIRM the bankruptcy court's decision.

1

BACKGROUND

I.    Factual Background:

On August 13, 2009, Betty Lou Fox ("Fox") filed a Chapter 7 bankruptcy petition.  On February 24, 2010 John Barcume ("Barcume") filed an Amended Complaint with the bankruptcy court objecting to Fox's discharge, pursuant to 11 U.S.C. §727.  Barcume, one of Fox's judgment creditors, alleged that Fox transferred assets prior to filing her petition in an attempt to hinder, delay, and defraud creditors.  Barcume also alleged that Fox made a number of false statements on her bankruptcy schedules.

Prior to a trial regarding the adversary proceeding, the parties stipulated to the following facts.

On April 23, 2009, Barcume obtained a state court judgment against Fox in the amount of $131,453.41.

On May 12, 2009, Fox sold her interest in Foxwood Furniture Restoration ("Foxwood") to a third party, Robert Altenburg ("Altenburg"), for $5,000.00.  The next day, on May 13, 2009, Barcume was granted a writ of execution against Fox.

After the sale of her interest in Foxwood, Fox continued to pay her personal creditors and pay personal expenses out Foxwood's bank accounts.  In Foxwood's general ledger, these personal payments were treated as loans from Foxwood to Fox.

On May 15, 2009, Fox granted a lien on her 2000 Dodge van to Navinchandra Shah ("Shah").  Fox, however, failed to disclose the lien to Shah in her bankruptcy schedules.  On May 27, 2009, Fox also transferred her interest in a 2008 Toyota Yaris to Shah.  After transferring the 2008 Toyota to Shah, Fox continued to possess and use the vehicle.  Also in

2

May, 2009, Barcume executed on Fox's 1997 Lexus in partial satisfaction of the state court judgment. Finally, on June 9, 2009, Fox transferred her interest in a 2000 Jeep to her daughter for no consideration. Fox also omitted her ownership of a 1999 Chevrolet from her bankruptcy schedules.

II.     The Bankruptcy Court's March 29, 2011 Opinion on Barcume's Complaint to Deny
        Fox's Discharge Under 11 U.S.C. §§ 727(A)(2) and (A)(4).

Fox denied the allegations in Barcume's complaint. The bankruptcy court held a trial on the matter on November 16, 2010.

On March 29, 2011, the bankruptcy court issued an Opinion in which it held that "Plaintiff has not met his burden with respect to either Section 727(a)(2) or Section 727(a)(4) and, therefore, [the Court] will not sustain Plaintiff's objection to Defendant's discharge. (Bankr. Opinion at 1). In addressing Barcume's §727(a)(2) claims, the bankruptcy court made specific determinations of whether Fox intended to hinder, delay, or defraud her creditors for each of the following five transactions identified by Barcume: (1) the transfer of Foxwood to Altenburg for less than equivalent value; (2) the concealment of income through depositing her income into Foxwood's accounts and paying expenses from those accounts; (3) the transfer of the lien on the 2000 Dodge van to Shah; (4) the transfer of the 2008 Toyota Yaris to Shah; and (5) the transfer of the 2000 Jeep to Fox's daughter for no consideration. (Bankr. Opinion at 6).

For each of these transactions, the bankruptcy court found that Fox's conduct did not support a finding of an intent to hinder, delay, or defraud. With respect to Fox's transfer of Foxwood to Altenburg, the bankruptcy court found that Barcume failed to show that the consideration was inadequate, the relationship between Fox and Altenburg was not substantial enough to infer a subjective intent to defraud, any personal payments made out of Foxwood's

3

accounts were treated as loans by Altenburg and Fox repaid those loans, and Fox's use of Foxwood's name in a state court action to recover an account receivable was insignificant.

 With respect to Barcume's allegation that Fox concealed income by depositing personal income into Foxwood accounts, the bankruptcy court held that there was insufficient evidence to infer an intent to hinder, delay, or defraud Fox's creditors. Specifically, the bankruptcy court found that Fox had a history of paying personal expenses and debts out of Foxwood accounts and, based upon an independent review of Fox's bank records, the bankruptcy courts could not infer that Fox intended to conceal her income.

 The bankruptcy court also found that Barcume did not meet his burden in establishing intent to delay, hinder, or defraud on the part of Fox with respect to her transfer of the Toyota Yaris title and her grant of a lien on the Dodge van to Shah, her boyfriend at the time of the transfers. Despite the close relationship to Fox and Shah, and the fact that the title transfer and lien grant occurred soon after Barcume executed on his judgment, the bankruptcy court found that the evidence tended to show that the transfer and grant were legitimate.

 Finally, the bankruptcy court found that Fox's June 9, 2009 transfer of the 2000 Jeep to her daughter was also not made with the intent to hinder, delay, or defraud. The bankruptcy court found that Fox's former spouse purchased the Jeep for their daughter, that the Jeep belonged to her daughter and was only in Fox's name for insurance purposes, and that she transferred the Jeep to her daughter's name upon her daughter's graduation from college. The bankruptcy court concluded that Fox's convincing explanation of the circumstances surrounding the transfer of the Jeep negated any initial inference of intent to delayer, hinder, or defraud, and found that Barcume did not provide sufficient evidence to prove otherwise.

The bankruptcy court also dismissed Count II of Barcume's complaint, which seeks to bar Fox's discharge for knowingly or fraudulently making a false oath or account in connection with the case under § 727(A)(2)(4). The alleged false statements by Fox related to: 1) Fox's Statement of Financial Affairs which stated that the Toyota Yaris was transferred for $12,000, when the actual consideration was a $5,700 credit; 2) Fox's failure to reveal the transfer of the 1999 Chevrolet; and 3) Fox's failure to disclose on her Schedule D the lien on the Dodge van granted to Shah.

With respect to each of these allegations by Barcume, the bankruptcy court found that the false statements or omissions were inadvertent or the result of mistake, and not made with the intent defraud creditors. As a result, the bankruptcy court found no basis to deny Fox's discharge.

## STANDARD OF REVIEW

In reviewing cases on appeal from the bankruptcy court, this Court reviews the bankruptcy court's findings of fact under a clear error standard. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir. 1997). A factual finding is clearly erroneous when "the reviewing court is left with a definite and firm conviction that a mistake has been committed." *United States v. Aven*, 997 F.2d 1150, 1152 (6th Cir. 1993). The district court must give great deference to the bankruptcy court as the trier of fact. *In re Alt*, 305 F.3d 413, 420 (6th Cir. 2002). The Court reviews the bankruptcy court's conclusions of law under a *de novo* standard. *In re Baker & Getty*, 106 F.3d at 1259. A bankruptcy court's equitable determinations are reviewed for an abuse of discretion. *In re Behke*, 358 F.3d 429, 433 (6th Cir. 2004). Finally, as with all evidentiary rulings made by a federal court, the bankruptcy court's rulings on

5

evidentiary issues are reviewed for an abuse of discretion. *See Hill v. Marshall*, 962 F.2d 1209, 1214 (6th Cir. 1992).

## ANALYSIS

On appeal, Barcume contends that the bankruptcy court disregarded the overwhelming weight of the evidence by declining to deny Fox's discharge pursuant to 11 U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4).

I.    The Bankruptcy Court Did Not Clearly Err by Refusing to Deny Fox's Discharge Under 11 U.S.C. § 727(a)(2).

Barcume's first contention is that a number of the aforementioned transactions made by Fox were made with the intent to defraud creditors and are "permeated with badges of fraud." (Barcume Br. at 3).

Section 727(a)(2)(A) provides that:

> (a) The court shall grant the debtor a discharge, unless . . .
>
> > (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has . . . concealed, or has permitted to be . . . concealed –
> >
> > > (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a).

"This section encompasses two elements: 1) a disposition of property, such as concealment, and, 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property." *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000) (internal citations omitted). "The elements of a violation of 11 U.S.C. § 727 must be proven by a preponderance of the evidence to merit denial of discharge." *Id*. In this

6

case, the basic facts are generally undisputed and the only issue before the bankruptcy court was Fox's intent in making the transfers.

Courts have found that debtors rarely admit to transferring property with the intent to hinder, delay, or defraud, and therefore a debtor's intent can "be established by circumstantial evidence or inferred from the debtor's conduct.*" In re Heraud*, 410 B.R. 560, 578 (Bankr. E.D. Mich. 2009). As a result, courts often consider the following "badges of fraud" when determining a debtor acted with fraudulent intent:

> 1. The lack or inadequacy of consideration;
>
> 2. A family, friendship, or other close associate relationship between the parties;
>
> 3. The retention of possession, benefit, or use of the property in question;
>
> 4. The financial condition of the party sought to be charged both before and after the transaction in question;
>
> 5. The existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; and
>
> 6. The general chronology of events and transaction.

*In re Cutler*, 291 B.R. 718, 237 (Bankr. E.D. Mich. 2003). These badges of fraud are not a conclusive list of factors that a court may consider.

The bankruptcy court essentially held that, while some of the badges of fraud were present in the transactions made by Fox, additional circumstances surrounding those transactions outweighed any inference of fraud. The Court finds that the bankruptcy court considered all of the evidence and did not clearly err in finding that Fox did not intend to delay, hinder or defraud her creditors.

7

A.      The Transfer of Foxwood to Altenburg.

First, the bankruptcy court considered Fox's transfer of Foxwood to Altenburg for

$5,000.  Like many of the transfers by Fox, the transfer of Foxwood occurred suspiciously close

in time to the judgment Barcume obtained against Fox.  The bankruptcy court, however,

determined that Barcume did not meet his burden of proof in establishing that the consideration

Fox received for Foxwood was inadequate, that Fox and Altenburg had a sufficiently close

relationship, or that Fox's use of Foxwood was indicative of bad faith.  In his brief, Barcume

again focuses on these factors.

With regard to the consideration received by Fox, Barcume contends that he had personal

knowledge of the value of Foxwood because he had prepared the business tax returns for the

years 2004, 2005, and 2006.  Barcume stated that he valued Foxwood's worth to be between

$80,000 and $120,000.  He also testified that he arrived at this number by simply taking

Foxwood's yearly net profit, and multiplying it by five.  The only evidence provided by Barcume

to support his valuation is his testimony of his own personal valuation of Foxwood.  In fact, the

trustee valued Foxwood at only $9,000, far less than the value Barcume placed on the business.

Other than Barcume's generalized, inexact, and unsophisticated method for valuing Foxwood,

Barcume did not provide any other evidence, such as an independent valuation, that Foxwood

was worth much more than the $5,000 Fox received from Altenburg.

As the bankruptcy court states in its opinion, however, Barcume's valuation fails to take

into account many factors.  Most importantly, Barcume fails to account for Foxwood's

diminished sales.  Fox stated that sales were "tanking," she was having difficulty collecting from

customers, and she had no alternative but to sell the business.  Fox testified, "I had absolutely no

8

more money available to sustain the business." She was also falling behind on her mortgage payments for her rental properties, causing further financial stress and increasing the pressure to sell Foxwood at a discount. Additionally, as part of the sale of Foxwood, Altenburg agreed that Fox could remain working for Foxwood, allowing her to maintain an income of $300 per week for a period of time after the sale, and allowing Altenburg time to adjust to the new business. Barcume, however, did not value Fox's continued employment as consideration received by Fox from the sale of Foxwood.

Barcume also contends that the relationship between Fox and Barcume weighs in favor of denying Fox a discharge. The Court agrees with the bankruptcy court that the relationship between Fox and Altenburg does not support an inference of an intent to hinder, delay, or defraud. Fox and Alternberg had neighboring businesses in an industrial complex for a number of years and would occasionally hire each other for various projects. While they would sometimes meet for coffee and converse, the relationship between the two could not be described as much more than a friendly business relationship. In fact, in Fox's deposition, she testified that Altenburg did not even know of the judgment against her when he offered to purchase her business. (Fox Dep. at 16).

Finally, with regard to the transfer of Foxwood, Barcume contends that Fox retained possession, benefit, and use of Foxwood. In support, Barcume points toward the fact that, after the transfer to Altenburg, Fox filed a small claims suit on behalf of Foxwood to collect an account receivable and represented herself to be the "sole proprietor" and "owner" of Foxwood. Barcume also states that Fox continued to use the Foxwood account to pay personal expenses.

After the evidentiary hearing, the bankruptcy court found that Fox's claim to the $300

9

receivable was too insignificant an amount to infer an intent to hinder, delay, or defraud creditors.  Additionally, the bankruptcy court found that, to the extent that Fox used the Foxwood account to pay personal expenses, Barcume did not provide any evidence to suggest that Fox had the intent to defraud her creditors.

Again, this Court agrees.  First, the Court is not inclined to infer that Fox had the intent to defraud her creditors by attempting to recover a $300 receivable – an amount relatively insignificant in comparison to Barcume's $131,453.41 judgment against Fox.  Second, the record reflects that it was common knowledge among Fox, Altenburg, and Barcume that Fox was a very poor bookkeeper and that Fox would often transfer funds between her personal account and the Foxwood account in order to pay both business and personal expenses.  There also appears to be no dispute that Altenburg treated the Foxwood funds used by Fox for personal expenses as loans. Both Fox and Altenburg testified that Altenburg maintained a loan ledger of Fox's personal use of the Foxwood account.  They also testified that Altenburg garnished Fox's wages until Fox repaid the entire amount that she used for personal expenses.  Barcume did not provide any evidence to refute these claims.  The income imputed from the payment of her personal expenses was deducted from her weekly wages.  Therefore it was not clear error for the bankruptcy court to find that Fox's use of the Foxwood accounts to pay her personal expenses did not amount to retaining the possession, benefit, and use of Foxwood after she transferred Foxwood to Altenburg.

B.    The Concealment of Money.

Barcume also challenges the bankruptcy court's determination that Fox did not conceal

money.  In is undisputed that Fox closed a personal bank account two weeks after Barcume

obtained a judgment against Fox.  Two months prior to Fox closing the account, the account had

a balance of $9,464.  Barcume contends that the closing of this account, in combination with

Fox's deposit of funds into the Foxwood account, amounts to the concealment of property under

§ 727(a)(2).

In support of this claim, Barcume relies on *Roudebush v. Sharp (In re Sharp)*, 244 B.R.

889 (Bankr. E.D. Mich. 2000) (debtor failed to disclose several assets and sources of income,

made numerous false representations on bankruptcy schedules, and testified falsely regarding his

assets on more than one occasion), *Craig v. Craig (In re Craig)*, 252 B.R. 822 (Bankr. S.D. Fl.

2000) (debtor failed to disclose interests in assets and admitted to trying to evade creditors), and

*Langston v. Balch (In re Balch)*, 25 B.R. 22 (Bankr. N.D. Tex. 1982) (debtor paid personal

expenses through corporate accounts for over 18 years and admitted doing so to evade creditors).

In *Sharp*, *Craig*, and *Balch*, the bankruptcy court held that the debtors' repeated, evasive or

dishonest conduct regarding the debtor's assets was sufficient to bar the debtor's discharge under

§ 727(a)(2).

In each of the cases cited by Barcume, the bankruptcy court's determinations turned on

the credibility of the debtor or the debtor's admission of concealment.  In *Sharp*, the bankruptcy

court stated, "Sharp lacked credibility as a witness," "his testimony simply did not give the Court

the impression that he was telling the truth," and that "[t]he evidence establishe[d] an extensive

pattern of deceit by Sharp."  *Sharp*, 244 B.R. at 893-94.  The bankruptcy court further stated:

> This is not a case of one or two or a few inadvertent omissions, as can
> happen in any case and probably happens in most cases. Nor is this
> a case where a trustee and a particularly aggressive creditor
> flyspecked Sharp's papers looking for problems, finding minor

11

> immaterial issues to complain about. Rather, the evidence establishes
> that a full disclosure of each of the matters that Sharp omitted would
> have been material to the administration of the bankruptcy case.

*Id*. at 894.  In *Craig*, the debtor failed to disclose her interest in a number of bank accounts, and "admitted that she started doing this at least in part because the IRS and another creditor had seized bank accounts in her own name." *Craig*, 252 B.R. at 828.  The bankruptcy court also found that the debtor "ignored her 'paramount duty' to carefully consider her schedules and SOFA, by first failing to disclose any bank account interests, then admitting bank deposits and signature authority, but still denying the use of such authority for her own benefit." *Id*. at 829. Similarly, in *Balch*, the debtor admitted "that the creation of [his] corporation, with the stock issued to his wife as her separate property and estate, was with the specific intent to prevent his creditors from reaching nonexempt assets." *Balch*, 25 B.R. at 24.  The debtor proceeded with this concealment of assets for over 18 years.

The Court must give great deference to the bankruptcy court's findings of fact.  In this case, the bankruptcy court found no such issue of credibility with regard to Fox and the Court agrees that the conduct of the debtors in *Sharp*, *Craig*, and *Balch* is far more egregious than Fox's co-mingling of funds among her personal accounts and the Foxwood accounts.  Unlike the debtors in *Sharp*, *Craig*, and *Balch*, Fox disclosed all of her closed accounts in her bankruptcy schedule and did not deny that she transferred personal funds, and paid personal expenses, to and from the Foxwood account.  Furthermore, as stated in Part A, above, Barcume knew that Fox used the Foxwood account to pay personal expenses prior to the sale of Foxwood to Altenburg. Fox testified that, depending on which account was short on funds, she would simply transfer money from one account to the other.  Thus, unlike the debtors in *Craig* and *Balch*, where the

12

debtors admitted to concealing assets to avoid payment to creditors, the record in this case reflects that Fox used the Foxwood account to *pay* both her business and personal creditors, rather than to avoid creditors.

Additionally, as pointed out by the bankruptcy court, although Fox's personal account contained $9,464.26 two months prior to Fox closing it, the account had already dissipated to $1,065.11 just days after Barcume obtained his judgment against Fox. (Plf's Ex. 3). Barcume does not provide any evidence to suggest that this dwindling of funds from Fox's personal account was motivated by Barcume's judgment against Fox. Accordingly, the Court finds that the bankruptcy court did not err in determining that Fox lacked intent to delay, hinder, or defraud her creditors by closing her personal bank account soon after Barcume obtained a judgment against Fox.

C.      <u>Fox's Sale of the Toyota Yaris and the Grant of a Lien on Her Dodge Van.</u>

Next, Barcume challenges the bankruptcy court's determinations as they relate to Fox's transfer of her Toyota Yaris and grant of a lien on Fox's 2000 Dodge van to Navinchandra Shah. Fox granted Shah the lien on the Dodge 22 days after Barcume obtained a judgment against Fox and 2 days after Barcume seized Fox's Lexus. Similarly, 34 days after Barcume obtained his judgment against Fox, she sold her Toyota to Shah for $5,700. In his brief, Barcume contends that grant of the lien is encumbered with badges of fraud because: (1) Shah, whom Fox lived with at the time of the transfers, had a close relationship with Fox; (2) the Toyota was sold for inadequate consideration; and (3) Fox retained use of the Toyota after she sold it to Shah.

Barcume does not dispute that Shah loaned Fox $6,800 in July of 2008 so that she could purchase the Toyota. Barcume also does not dispute that, on August 28, 2008 – the date Fox

13

purchased the Toyota – Shah placed a lien on the Toyota as security for his loan. The lien is reflected on Fox's August 28, 2008 certificate of title. (Plf's Ex. 2). Shah testified that, as Fox's business began to decline, he expressed to Fox that he was concerned about her ability to repay the $6,800 loan. As a result, Shah and Fox agreed that Fox would transfer the Toyota to Shah and Shah would credit Fox for $5,700 toward the money that she owed him. Shah based the $5,700 credit on the condition of the Toyota and the number of miles that the car had been driven. Because Fox still owed Shah approximately $1,100, Fox and Shah mutually agreed that Fox would grant Shah a lien on her Dodge as security for the remaining loan balance. Although there is differing testimony as to the extent of Fox's use of the Toyota after the transfer, the Court will credit Fox's testimony that she maintained daily use of the Toyota after the transfer.

Like the transfer of Foxwood to Altenburg, the bankruptcy court found that Barcume did not meet his burden of proving that Fox had an intent to hinder, delay, or defraud creditors when she executed these transfers to Shah. Barcume did not provide any evidence to contradict the testimony of Fox and Shah regarding the Toyota and Dodge transfers. Although Barcume contests the adequacy of consideration for the Toyota, he provides no independent valuation of the Toyota to support his claim. While there exists some badges of fraud, such as a close relationship between Fox and Shah and Fox's use of the vehicle after the transfer, these factors are not determinative and the Court cannot say that the bankruptcy court's finding as to the intent of Fox was clear error. Like Fox's use of the Foxwood bank account, it appears that Fox's intent in transferring the Toyota and granting a lien on the Dodge was, in fact, to *pay* creditors, rather than evade them. In addition to evidence of a debtor's intent to defraud, hinder or delay, "the court may also consider the implications of the absence of certain badges of fraud or badges

14

of intent to hinder or delay in the circumstances surrounding the transfer and/or evidence of a legitimate purpose for the transfer." *In re Bernier*, 282 B.R. 773, 781-82 (Bankr. D. Del. 2002). Here, the fact that one of the creditors happened to have a close relationship with Fox does not change that Fox's intent was, in fact, to pay off a creditor. Shah executed the lien which made the transfers involving the Toyota and Dodge possible almost 9 months before Barcume obtained his judgment against Fox. The bankruptcy court did not clearly err by finding that the evidence of the transfers' legitimacy outweighed any evidence that the transfers to Shah were fraudulent.

   D.   Fox's Transfer of the 2000 Jeep to Her Daughter.

   Finally, Barcume challenges the bankruptcy court's determination regarding Fox's transfer of a 2000 Jeep. On June 1, 2009 – 37 days after Barcume obtained a judgment against Fox – Fox transferred the Jeep to her daughter for no consideration. Barcume again asserts that the close relationship between Fox and her daughter, and the adequacy of consideration received by Fox reflect an intent hinder, delay, or defraud creditors. The bankruptcy court determined that the circumstances surrounding the transfer of the Jeep did not warrant a denial of discharge. Again, this Court agrees.

   Barcume contends that Fox's transfer of the Jeep was gratuitous, and therefore the burden to shifts to Fox to prove that she had no intent to defraud her creditors. Fox, however, testified that the Jeep was purchased by her daughter's father for their daughter. Fox further testified that she held title to the Jeep for insurance purposes only and transferred the Jeep to her daughter upon her daughter's graduation from college. At the trial on this matter, Fox stated, "I never bought it [the Jeep], I never paid for it, I never owned it." (Trial Trans. at 51). Fox's testimony regarding the Jeep went uncontroverted and Barcume presented no additional evidence that Fox

15

owned the vehicle. Because Fox did not actually own the Jeep, the transfer to her daughter was not gratuitous. Accordingly, the bankruptcy court found that the legitimate circumstances surrounding the transfer outweighed any badges of fraud. Barcume's conclusory statements in his brief do not provide the Court with a reason to question the amount of weight that the bankruptcy court gave to Fox's testimony regarding the transfer of the Jeep. The Court finds that the bankruptcy did not clearly err in holding that Fox did not intend to hinder, delay, or defraud her creditors by transferring the Jeep to her daughter.

II.   The Bankruptcy Court Did Not Clearly Err by Refusing to Deny Fox's Discharge Under 11 U.S.C. § 727(a)(4).

In addition to relying upon alleged violations of § 727(a)(2)(A), Barcume also alleges that Fox made statements in her bankruptcy schedules and that the bankruptcy court erred by finding that these false statements did not warrant a denial of discharge under § 727(a)(4)(A). Fox stated in her Statement of Financial Affairs that she received $12,000 in consideration for transferring the Toyota Yaris to Shah, when in actuality, she received only a $5,700 credit toward the debt she owed to Shah.

Section § 727(a)(4)(A) provides that the Court shall grant the debtor a discharge unless "the debtor knowingly and fraudulently, or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The Sixth Circuit has stated that, in order for a Court to deny a debtor discharge under § 727(a)(4)(A), "a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." *In re Keeney*, 227 F.3d at 685. "Whether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact." *Id*.

16

(citing *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987)).   A finding of

fraudulent intent under § 727(a)(4)(A) requires a material misrepresentation by the debtor that

the debtor knows to be false, or one that is made with reckless disregard as to its truth, or a

material omission that the debtor knows will create an erroneous impression.   *In re Keeney*, 227

F.3d at 685.   "[C]ourts may deduce fraudulent intent from all the facts and circumstances of a

case.   However, a debtor is entitled to discharge if false information is the result of mistake or

inadvertence." *Id.* at 686 (internal quotation marks and citations omitted).

      The entirety of Barcume's argument on this issue merely states:

> The Debtor made a materially false statement on question 10 of the
> Statement of Financial Affairs where she claimed sale of the Yaris to
> Shaw was for $12,000 when in fact, as indicated in the records of the
> Secretary of State (Plaintiff Exhibit 2), the actual consideration for
> the sale was $5,700. This was the same Yaris that the Debtor
> purchased new 10 months earlier for $14,799. This is a material
> misrepresentation designed to conceal the fraudulent conveyance and
> constitutes a false oath within the meaning of 11 USC Section
> 727(a)(4).

(Plf's Br. at 11).

      The bankruptcy court held that Barcume failed to meet his burden of proving that Fox

knew that her statement was false, or that she made it with reckless disregard of its truth.   During

trial, Fox testified that the error on her bankruptcy schedule was the result of a mix-up between

the transfer of her Toyota Yaris to Shah and a prior sale of a Toyota Spyder, which she sold for

$12,000 approximately two years before the trial.   The record reflects that Fox was candid, in

both her deposition and trial testimony, about the circumstances surrounding the transfer of the

Toyota Yaris to Shah.   The Court finds no other instance of Fox asserting that she received

$12,000 in exchange for the Toyota Yaris.   Because Barcume does not provide any evidence that

Fox knew of her error, or that it was anything other than a mistake on the part of Fox, the Court agrees that Barcume has not met his burden of proof as to the elements of § 727(a)(4)(A).  The bankruptcy court did not clearly err by finding that Fox's mistake on her Statement of Financial Affairs did not warrant a denial of discharge under § 727(a)(4)(A).

CONCLUSION

As previously stated, this Court must give great deference to the findings of fact made by the bankruptcy court.  While the circumstances surround Fox's bankruptcy are indeed unusual, the Court is not inclined to overturn these findings of fact, including the bankruptcy court's determinations on the intent of the debtor, as clearly erroneous.  Contrary to the position of Barcume, the bankruptcy court considered the totality of the evidence and the Court is simply not left with a definite and firm conviction that the bankruptcy court has erred.

Accordingly, for the reasons stated above, the Court **AFFIRMS** the judgment of the bankruptcy court.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Court

Dated:  March 21, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on

18

March 21, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager